Of Counsel:
FUKUNAGA MATAYOSHI CHING & KON-HERRERA, LLP

WESLEY H. H. CHING          2896
SHEREE KON-HERRERA          6927
841 Bishop Street, Suite 1200
Honolulu, Hawaii  96813
Telephone:  (808) 533-4300
Facsimile:  (808) 531-7585
E-Mail:      whc@fmhc-law.com
             skh@fmhc-law.com

Attorneys for Plaintiff
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> FIRST SPECIALTY INSURANCE CORPORATION; EVEREST NATIONAL INSURANCE COMPANY, <br><br> Defendants. | CIVIL NO. _____ <br> (Declaratory Judgment) <br><br> COMPLAINT FOR DECLARATORY AND RELATED RELIEF; EXHIBIT "1" |

## COMPLAINT FOR DECLARATORY AND RELATED RELIEF

Plaintiff Travelers Property Casualty Company of America ("Travelers")

alleges and avers the following:

**Federal Diversity Jurisdiction and Venue**

1.      Plaintiff Travelers is a corporation incorporated under the laws of the State of Connecticut and having its principal place of business in Hartford, Connecticut.

2.      Defendant First Specialty Insurance Corporation ("FSIC") is a Missouri corporation with its principal place of business in Kansas City, Missouri, and engaged in the business of issuing insurance policies.

3.      Defendant Everest National Insurance Company ("Everest") is a Delaware corporation with its principal place of business in Liberty Corner, New Jersey, and engaged in the business of issuing insurance policies.

4.      The amount in controversy here exceeds $75,000 (currently more than $600,000) exclusive of interest and costs.  Thus, federal diversity jurisdiction lies pursuant to 28 U.S.C. §§ 1332(a) and (c), on the grounds that: (i) the amount in controversy exceeds $75,000; and (ii) complete diversity exists between the plaintiff and the named defendants.

5.      Venue is proper in this district because the underlying litigation is pending in this judicial district (28 U.S.C. 1391(c)(2)).

**Nature of Action**

6.      Plaintiff Travelers insured Oasis Oahu, LLC ("Oasis Oahu"), which became the owner of an apartment complex known as the Oasis at Waipahu

located at 94-207 Waipahu Street, Waipahu, Hawaii 96797 ("Property") on or about March 30, 2016.

7.     The prior owner of the Property, MSBG Oasis, LLC ("MSBG Oasis") contracted with Apartment Management Consultants, LLC ("AMC") to provide property management and leasing services for the Property.  Upon acquiring the Property on or about March 30, 2016, Oasis Oahu continued to use AMC to provide property management and leasing services for the Property.

8.     MSBG Oasis, AMC, and Oasis Oahu have been sued in a class action lawsuit alleging that from May 17, 2013 to May 2017, the defendants failed to provide the sanitary and habitable housing units they promised at the Project and injured the class action members by overpayment of rent and lease termination charges.

9.     Travelers accepted the defense of its own Named Insured Oasis Oahu in the class action lawsuit subject to a reservation of rights.

10.    In response to AMC's tender of defense as an alleged Additional Insured under the policy issued to Oasis Oahu, Travelers accepted AMC's defense subject to a reservation of rights and has paid for AMC's defense in the class action lawsuit.

11.    Defendants FSIC and Everest insured AMC as their Named Insured for the time period relevant to the class action lawsuit.

12.     Defendants FSIC and Everest owe a duty to defend their Named

Insured AMC, but have refused to participate in AMC's defense in the class action

lawsuit.  Plaintiff Travelers therefore seeks from FSIC and Everest declaratory

and related relief, including full equitable indemnity or, alternatively, equitable

contribution.

## The Underlying Agreements

13.     On or about March 5, 2014, the prior owner MSBG Oasis and AMC

entered into a Management and Leasing Agreement for the Property known as

Oasis at Waipahu ("First PM Agreement").  Under the First PM Agreement, AMC

as "Manager" was required to indemnify MSBG Oasis as "Owner" including any

successors and assigns as follows:

> 4.4 Indemnification of Owner. Manager agrees to
> indemnify, defend and hold harmless Owner, Owner's
> members, partners, officers, directors, employees, servants,
> attorneys, nominees, subsidiaries, affiliates, agents, franchisees,
> successors and assigns (collectively, "Owner Indemnitees")
> from and against any and all loss, damage, charges, liabilities
> (direct or indirect), claims, expenses and suits or other causes of
> action including but not limited to attorneys' fees and costs of
> litigation, of any nature whatsoever arising out of any "Matter
> Entitling Owner to Indemnity" (as hereinafter defined). As used
> herein, a "Matter Entitling Owner to Indemnity" shall mean
> breach of this Agreement by Manager or negligence, willful
> misconduct, fraud or violation of law by Manager or any of the
> "Manager Parties" (as hereinafter defined) or any action taken
> by Manager or any of the Manager Parties outside the scope of
> this Agreement. The indemnity and defense obligations of
> Manager under this Section 4.4 shall include, without
> limitation) any failure by Manager to procure insurance for the

benefit of Owner or any failure to add Owner as an additional insured pursuant to the provisions of this Agreement. As used herein, the "Manager Parties" shall mean Manager, any subcontractor or vendor of Manager, and/or any of their respective employees, agents and/or contractors. This indemnification shall survive the expiration or termination of this Agreement as to claims arising prior to such expiration or termination.

14. Under the First PM Agreement, AMC as "Manager" also was required

to maintain insurance coverage as follows:

**ARTICLE 4. INSURANCE AND INDEMNIFICATION**

4.1 <u>Manager's Insurance</u>. Manager shall maintain insurance against risks of physical damage or loss to personal property belonging to Manager in amounts sufficient to replace such personal property in the event of loss. In addition, Manager shall maintain insurance coverages in the following minimum amounts:

. . .

(b) Commercial General Liability with Broad Form Comprehensive GL Endorsement: limit of no less than $1,000,000 per occurrence / general aggregate. This coverage shall be primary as to any claim relating to a matter for which Manager is required to indemnify Owner pursuant to this Agreement. Owner and any affiliate of Owner designated by Owner shall each be named as an additional insured on such policies. Such policy shall contain an endorsement waiving all rights of subrogation against Owner and its employees, agents and contractors. The policies shall be written on an occurrence basis.

. . . .

(f) Insurance against the misfeasance, malfeasance and non-feasance (errors and omissions coverage) of Manager relating to the management of the Property, with limits of at least $1,000,000 per occurrence.

. . . .

. . . . Additionally, all insurance coverages required to be obtained by Manager hereunder shall be primary as to any claim relating to the Property for which Manager is required to indemnify Owner pursuant to this Agreement.

15.     Under the First PM Agreement, AMC's indemnity obligation which includes an obligation to defend Owner and its successors and assigns "survive[s] the expiration or termination of this Agreement as to claims arising prior to such expiration or termination."

16.     On or about March 29, 2016, Oasis Oahu and AMC entered into a Property Management Agreement for the Property ("Second PM Agreement"). Under the Second PM Agreement, AMC as "Manager" was required to indemnify Oasis Oahu as "Owner" for leasing claims as follows:

11.2    <u>INDEMNIFICATION BY MANAGER</u>
. . . .
B.      <u>Leasing Indemnification</u>: Manager shall indemnify, defend and save Owner harmless from and against: (a) any claims for leasing, commission, compensation or brokerage fees, or other charges made against Owner, other than those approved and agreed to by Owner, and provided that the claim is made by a broker, agent, finder or other party who dealt with or was engaged by Manager in connection with the leasing of the Project (b) any claim other than injury to persons or property, made against Owner arising out of the negligence of Manager in performing leasing activities of the Project; or (c) any claims made against Owner for the failure of Manager to abide by fair housing statutes, rules or regulations which pertain to the leasing or renting of apartment units of the Project; provided however, this leasing indemnification shall not be applicable where Manager has followed the instructions of Owner with regard to the selection of tenants for the Project; and in following such Owner's instructions, Manager is alleged

to have violated any such fair housing statute, rule or regulation.

17.     Under the Second PM Agreement, AMC as "Manager" also was

required to maintain insurance coverage as follows:

> 12.2   INSURANCE BY MANAGER:
>         A.      PROFESSIONAL LIABILITY INSURANCE:
> Manager shall procure and maintain insurance against the
> misfeasance, malfeasance, or non-feasance (errors and
> omissions) of Manager relating to the management of the
> Project, with limits of not more than One Million Dollars
> ($1,000,000.00) each occurrence and with a deductible of not
> less than Twenty-Five Thousand Dollars ($25,000.00) per
> claim.
>         B.      GENERAL LIABILITY INSURANCE: Manager
> agrees to maintain One Million Dollars ($1,000,000.00) of
> general liability insurance. Manager will name owner as
> additional insured. Manager will notify owner anytime limits
> are changed. In obtaining this policy of insurance, Manager
> shall require its insurer to waive all of its rights to recovery,
> under subrogation or otherwise, against Owner.

**FSIC Insurance Policies**

18.     FSIC issued liability insurance policy numbers IRG 2001759 00 and

IRG 2001759 01 to AMC, for the policy periods effective February 28, 2014 to

February 28, 2015 and February 28, 2015 to February 28, 2016, respectively

(collectively, "FSIC Insurance Policies").  Subject to all of its terms, the FSIC

Insurance Policies provide Commercial General Liability coverage, including but

not limited to a duty to defend AMC, which is identified in the Common Policy

Declarations as in the business of "Apartment Property Management."

19.    Based on the policy periods effective February 28, 2014 to February 28, 2015 and February 28, 2015 to February 28, 2016, FSIC has a duty to defend AMC for claims arising prior to the time Oasis Oahu became the owner of the Property and/or before Oasis Oahu and AMC entered into the Second PM Agreement.

**Everest Insurance Policies**

20.    For its part, Everest issued liability insurance policy numbers CF4GL00698-161 and CF4GL00698-171 to AMC, for the policy periods effective February 28, 2016 to February 28, 2017 and February 28, 2017 to February 28, 2018 (collectively, "Everest Insurance Policies").  Subject to all of its terms, the Everest Insurance Policies provide Commercial General Liability coverage, including but not limited to a duty to defend AMC, for "Coverage Description" that is identified in the policies as "Real Estate Managed Properties."

21.    Based on the policy periods effective February 28, 2016 to February 28, 2017 and February 28, 2017 to February 28, 2018, Everest has a duty to defend AMC for claims arising prior to the time Oasis Oahu became the owner of the Property and/or before Oasis Oahu and AMC entered into the Second PM Agreement, as well as continuing into the time after Oasis Oahu became the owner of the Property.

22.    The Everest Insurance Policies also potentially extend coverage, under the circumstances here, to Oasis Oahu.  The ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION Endorsement includes as an additional insured, "Any person or organization that entered into a written contract with the named insured requiring such person(s) or organization(s) to be named as an additional insured with respect to the named insured's performance of operations or in connection with any premise owed or rented by the named insured."

23.    As indicated above, AMC agreed in the Second PM Agreement to have Oasis Oahu named as an additional insured under AMC's policy.  Thus, Oasis Oahu is an additional insured under the Everest Insurance Policies for liability arising out of performance of AMC's then ongoing operations.

**Travelers Insurance Policies**

24.    Travelers issued liability insurance policy number P-660-3666P163-TIL-15 to Dinapoli Property Management for the policy period effective December 1, 2015 to December 1, 2016.  Pursuant to a General Purpose Endorsement effective March 29, 2016, Oasis Oahu, LLC was added as a Named Insured under the policy.

25.    Travelers issued liability insurance policy number P-660-3666P163-TIL-16 to Dinapoli Property Management for the policy period effective

December 1, 2016 to December 1, 2017. Pursuant to a General Purpose Endorsement, Oasis Oahu, LLC was included as a Named Insured under the policy.

26. The Travelers Insurance Policies also included as an insured, "[a]ny person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager". Consequently, Oasis Oahu is not an insured under the Travelers Insurance Policies prior to March 29, 2016, and AMC is not even potentially covered under the Travelers Insurance Policies prior to March 29, 2016.

## The Class Action Suit

27. On or about May 17, 2017, Plaintiffs Jennifer Cannon, Latree Fretwell, Jacob Ching, Sonia Ching, and Stephanie J. Gonsalves, individually and on behalf of all others similarly situated (collectively, "Class Action Plaintiffs") filed a Class Action Complaint for Damages and Injunctive Relief in Civil No. 17-1-0815-05 in the Circuit Court of the First Circuit, State of Hawai'i ("Class Action Suit").

28. On or about June 1, 2017, the Class Action Plaintiffs filed a First Amended Complaint against Defendants MSBG Oasis, LLC, MSBG Oasis Holding, LLC, the Bascom Group, LLC (collectively, "MSBG Group"), AMC, and Oasis Oahu in the Class Action Suit.

29.    On or about October 30, 2018, the Class Action Plaintiffs filed a Second Amended Complaint against the same defendants in the Class Action Suit. A copy of the Second Amended Complaint in the Class Action Suit is attached hereto as Exhibit "1".

30.    The Second Amended Complaint alleges in paragraph 20 that the class of plaintiffs "consists of over 50 persons who entered into lease agreements with MSBG Oasis, LLC and/or Apartment Management Consultants, LLC and who reside or have resided at the Oasis at Waipahu from May 17, 2013 to the present." Therefore, the claims in the Class Action Lawsuit arise before Oasis Oahu and AMC entered into the Second PM Agreement.

31.    The Second Amended Complaint further bases the claims against defendants on allegations that are outside the time when AMC was acting as Oasis Oahu's property manager, including but not limited to the following:

> 28.    In August 2015, Plaintiff Cannon leased a unit at the Oasis for $1,929.00 per month for a term of one year. That same month, Plaintiff and her two young children moved into unit no. 264 at the Oasis.
> 29.    Before entering into the lease, Plaintiff Cannon was shown a model unit at the Oasis by Defendant Apartment Management Consultant.
> . . . .
> 32.    Defendants knew or should have known at the time they showed Plaintiff Cannon the model unit and leased unit no. 264 to Plaintiffs, that unit 264 differed materially from the model unit and was uninhabitable.
> . . . .

37. Plaintiff Cannon would not have leased a unit at the Oasis had she been shown the actual unit in which she would be residing instead of or in addition to the model unit.

38. In early 2014, Plaintiff Fretwell leased and moved into a unit at the Oasis.

39. Soon after moving into the Oasis, Plaintiff Fretwell encountered rat droppings, rats, roaches, termites, and other pests, and other items in need of repair in her unit which rendered her unit unsanitary and uninhabitable.

. . . .

44. In July 2015, Plaintiff Gonsalves leased and moved into a unit at the Oasis.

45. Soon after moving into the Oasis, Plaintiff Gonsalves encountered rat droppings, rats, roaches, termites, and other pests, and other items in need of repair in her unit which rendered her unit unsanitary and uninhabitable.

. . . .

47. In or about March 2014, Plaintiff Driggers, who at the time was on active duty in the military, leased and moved into a unit at the Oasis.

48. Plaintiff Driggers' lease was for one year.

49. Plaintiff Driggers was not informed by Oasis that there was any problem with rats or other pests in his unit.

50. After moving into the Oasis, Plaintiff Driggers encountered rats in his unit.

. . . .

53. In or around July 2014, Plaintiff Driggers notified Oasis that he would be terminating his lease.

54. Plaintiff Driggers paid a lease termination fee of approximately $3,000 to Oasis.

32. Based on these clear and unambiguous allegations in the Second

Amended Complaint, the claims in the Class Action Lawsuit clearly arise prior to

the time Oasis Oahu became the owner of the Property on or about March 29,

2016 and/or before the policy periods of the Travelers Insurance Policies.

33.     The claims in the Class Action Suit against Defendants also are based on "leasing" activities by AMC and a failure by AMC to abide by fair housing statutes, rules or regulations which pertain to the leasing or renting of units of the Project, from which AMC is required to indemnify, defend and save Oasis Oahu harmless, including but not limited to the following allegations from paragraph 57 of the Second Amended Complaint:

> a.     Defendants market residential units to prospective tenants by showing them a "model" unit in person or by photograph which differs substantially in terms of quality, sanitary condition, and safety from the residential units that the tenants enter into leases with Defendants to use as their personal homes.
> b.     Defendants frequently induce prospective tenants to enter into leases to reside at the Oasis for a minimum fixed period of one (1) year after only showing them a "model" unit, in person, or by photograph.
> c.     Defendants are required to substantially comply with all applicable laws regarding safety, sanitation, and fair housing.
> d.     Based on the appearance of the "model" home shown to them by Defendants at the Oasis, tenants were led to believe that they would be receiving safe, sanitary, and habitable personal housing at the Oasis.
> e.     For several years, Defendants have known or should have known that there is a significant issue with rat infestation and infestation of other pests at the Oasis, as Defendants have been put on notice of the infestation since at least 2012.

34.     The Second Amended Complaint asserts claims against defendants for unfair and deceptive trade practices, unfair methods of competition, breach of implied warranty of habitability, and private nuisance.

35.     Consequently, Travelers is informed and believes and on that basis alleges that Defendants FMIC and Everest owe a primary duty and/or co-primary duty to defend their named insured AMC for the claims asserted in the Class Action Lawsuit.

### Travelers Accepts Its Duty to Defend Subject to Reservation of Rights and Both FSIC and Everest Breach Their Respective Duties to Defend

36.     On August 31, 2017, counsel for MSBG Group tendered the Class Action Lawsuit to AMC under both the First PM Agreement and any policies of insurance issued to AMC.  As explained in the August 31, 2017 tender, the claims in the Class Action Lawsuit against MSBG Group, AMC, and present owner Oasis Oahu arise out of the "management, operation, leasing and maintenance of the Property, as well as compliance with all applicable federal, state and municipal laws, ordinances, regulations and orders" which "fall squarely within the purview of AMC's responsibilities."  The August 31, 2017 tender was directed to AMC and its liability carriers with a copy sent directly to FSIC.

37.     On December 26, 2017, counsel for AMC tendered the Class Action Lawsuit back to MSBG Oasis under the First PM Agreement and any policies of insurance issued to MSBG Oasis.

38.     On December 26, 2017, counsel for AMC also tendered the Class Action Lawsuit to Oasis Oahu under the Second PM Agreement and any policies of insurance issued to Oasis Oahu.  The December 26, 2017 tender to Oasis Oahu

cited to various allegations outside the time when AMC was acting as Oasis

Oahu's property manager and prior to March 29, 2016 when Oasis Oahu became

the owner of the Property.

39.     On January 12, 2018, Travelers agreed to defend AMC under a full

reservation of rights to decline coverage.

40.     As alleged above, on or about October 30, 2018, the Second Amended

Complaint was filed and became the operative complaint in the Class Action Suit.

41.     On or about November 8, 2018, the Order Granting Plaintiffs' Motion

for Class Certification for Approval of Class Notice and Dissemination Plan was

filed and specifically certified a class of all persons who lease or who have leased a

housing unit at the Project during the "period of May 17, 2013 to May 17, 2017."

42.     On December 13, 2018, Travelers demanded reimbursement from

FSIC for a portion of all attorney's fees, expert costs, and other defense costs

incurred to defend FSIC's named insured AMC and an agreement to split all future

defense costs and expenses in the Class Action Lawsuit.

43.     The basis for Travelers' demand included but was not limited to the

facts that (1) Travelers did not have any obligation to defend or indemnify AMC

for claims prior to March 29, 2016, (2) the Class Action Lawsuit made various

allegations as early as 2014 and before March 29, 2016, (3) the certified class

included all lessees who were allegedly damaged from May 17, 2013 to May 17,

2017, and (4) AMC's insurers had a primary duty to defend AMC for claims between May 17, 2013 to March 29, 2016.

44.     On or about April 1, 2019, counsel for Oasis Oahu tendered the defense of the Class Action Lawsuit to AMC and its insurers where the Class Action Plaintiffs' injuries allegedly arose out of the management and leasing of the Project, for which AMC must defend, indemnify and hold harmless Oasis Oahu.

45.     On or about May 17, 2019, FSIC rejected Travelers' demand for reimbursement and demand to contribute to AMC's defense, thereby breaching its duty to defend its named insured AMC in the Class Action Lawsuit.

46.     FSIC's May 17, 2019 rejection letter was based on FSIC's contention that to the extent Travelers Insurance Policies did not provide primary coverage for AMC, Oasis Oahu had an independent contractual obligation to indemnify and defend AMC.  Inconsistently, FSIC's May 17, 2019 rejection letter simultaneously acknowledged that the certified class included all lessees who were allegedly damaged from _May 17, 2013_ to May 17, 2017, and that AMC and Oasis Oahu did not enter a management agreement requiring Oasis Oahu to procure primary insurance for AMC until _March 29, 2016_.

47.     FSIC's May 17, 2019 rejection letter also noted but did not clearly accept or reject Oasis Oahu's tender of defense for claims "other than injury to persons or property made against Owner [Oasis Oahu] arising out of the

negligence of Manager [AMC] in performing leasing activities." Rather than responding based on its own obligations as an insurer under the complaint allegation rule and other Hawaiʻi law, FSIC instead responded that it "anticipate[d] that AMC will assert it was not independently negligent and its duty to defend Oasis Oahu, therefore, is not triggered".

48. On or about August 1, 2019, Everest acknowledged that it was investigating Oasis Oahu's tender of the Class Action Lawsuit to AMC and its insurers under reservation of rights.

49. On or about August 2, 2019, Travelers responded to Everest with its understanding that Everest had a duty to defend its named insured AMC for the effective policy period prior to Oasis Oahu's purchase of the Property.

50. On or about November 11, 2019, Everest rejected any demand to contribute to AMC's defense, thereby breaching its duty to defend its named insured AMC in the Class Action Lawsuit. Everest's November 11, 2019 rejection letter was based on Everest's contention that any coverage provided to Everest's named insured AMC was excess to the coverage provided by Travelers, which insured Oasis Oahu, and AIG, which insured MSBG Oasis.

51. On or about December 2, 2019, Travelers issued a supplemental reservation of rights letter to AMC relating to the Travelers Insurance Policies. Travelers' December 2, 2019 letter advised AMC that coverage was not available

under the Travelers Insurance Policies on a number of bases, including but not limited to the absence of coverage for AMC's gross negligence and/or for any claims occurring prior to Oasis Oahu's addition to the Travelers Insurance Policies, ownership of the Property, and/or agreement with AMC on March 29, 2016.

52.     Accordingly, FSIC and Everest have failed to defend their named insured AMC in the Class Action Lawsuit.  Whether or not MSBG Oasis's insurer AIG also has a duty to defend AMC does not excuse FSIC and Everest under Hawai'i law, where the duty to defend arises on the mere possibility of coverage based on the allegations in the operative complaint and where an otherwise primary insurer may not disclaim its duty to defend at the time of tender based on operation of an "other insurance" clause or another carrier's policy.

53.     Travelers has incurred fees and costs far exceeding $75,000 to date to defend AMC in the Class Action Lawsuit.  Despite acknowledging their duty to defend AMC as their named insured in the Class Action Lawsuit, Defendants FSIC and Everest have refused to provide an immediate defense to AMC and failed to reimburse Travelers for the attorneys' fees and costs incurred in defending AMC.

## FIRST CLAIM FOR RELIEF
### (Declaratory Relief)

54.     Travelers repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 53 above.

55.     Due to the position taken by FSIC and Everest in refusing or neglecting to honor their respective duties to defend their own named insured AMC, and failing to contribute to AMC's defense and reimburse Travelers for the reasonable attorneys' fees and costs incurred in defending AMC in the Class Action Lawsuit, an actual and genuine controversy exists as to the rights and liabilities of the parties named herein.

56.     Travelers seeks a judicial determination of the rights and duties of itself on the one hand and Defendants FSIC and Everest on the other with respect to the actual controversy arising out of the Class Action Lawsuit, including but not limited to the following issues:

A.     Whether FSIC and/or Everest owe AMC a defense in the Class Action Lawsuit;

B.     Whether FSIC and/or Everest's duty to defend AMC in the Class Action Lawsuit is primary to or co-primary with Travelers;

C.     Whether FSIC and/or Everest have breached their respective duties to defend AMC in the Class Action Lawsuit.

## SECOND CLAIM FOR RELIEF
### (Equitable Indemnity)

57.     Travelers repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 56 above.

58.     Defendants FSIC and/or Everest are obligated to defend AMC in the Class Action Lawsuit, which they have acknowledged, and, as such, are equitably obligated to reimburse Travelers for the money Travelers has spent defending AMC.

59.     Under the terms and conditions of all applicable policies and the underlying property management agreements, FSIC and Everest's obligations to pay defense fees and costs for AMC is primary and/or co-primary for the respective policy periods that fall within the class action period.  Thus, FSIC and Everest owe Travelers reimbursement for the money Travelers has spent and will spend defending AMC in the Class Action Lawsuit.

## THIRD CLAIM FOR RELIEF
### (Equitable Contribution)

60.     Travelers repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 59 above.

61.     Travelers has paid all of the defense fees and costs for AMC to date. Under the alternative theory of equitable contribution, Travelers is equitably entitled to contribution or reimbursement from Defendants of some, at least two-third, or more, of the money Travelers has spent in connection with the Class Action Lawsuit, plus interest from the date of each payment.

# PRAYER

Wherefore, Travelers Property Casualty Company of America prays for a judgment against Defendants First Specialty Insurance Corporation and Everest National Insurance Company:

1.	Declaring that FSIC owes AMC a defense in the Class Action Lawsuit;

2.	Declaring that Everest owes AMC a defense in the Class Action Lawsuit;

3.	Declaring that FSIC's duty to defend AMC is primary or co-primary to Travelers' duty for respective time periods at issue in the Class Action Lawsuit;

4.	Declaring that Everest's duty to defend AMC is primary or co-primary to Travelers' duty for respective time periods at issue in the Class Action Lawsuit;

5.	Declaring that FSIC has breached its duty to defend AMC in the Class Action Lawsuit;

6.	Declaring that Everest has breached its duty to defend AMC in the Class Action Lawsuit;

7.	Declaring that Travelers is entitled to equitable indemnity from FSIC and Everest for the money that Travelers paid and is paying to defend AMC in the Class Action Lawsuit;

8. Declaring, alternatively, that Travelers is entitled to equitable contribution from FSIC and Everest for some, at least two-thirds, or more, of the money that Travelers paid and is paying to defend AMC in the Class Action Lawsuit;

9. Providing a monetary award consistent with the Court's findings;

10. Providing reasonable attorney's fees and the costs of suit as allowed by law or equity;

11. Providing statutory interest as allowed by law; and

12. Providing all other relief which the Court finds just and equitable.

DATED: Honolulu, Hawaii, January 31, 2020.

/s/ Wesley H.H. Ching
WESLEY H. CHING
SHEREE KON-HERRERA
Attorneys for Plaintiff
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA